UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHESTERFIELD HALL III,

        Plaintiff,

        v.                                                           Case No. 18-C-1714

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

# DECISION AND ORDER

Plaintiff Chesterfield Hall III, proceeding *pro se*, filed this action for judicial review of a decision by the Commissioner of Social Security denying his applications for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act. Hall argues that the administrative law judge's (ALJ) decision is flawed and requires remand. For the reasons that follow, the decision of the Commissioner will be affirmed.

## BACKGROUND

Hall filed an application for a period of disability and disability insurance benefits, along with an application for supplemental security income on August 11, 2014. R. 18. Hall claims his disability began on August 3, 2013. *Id.* He listed chronic pain, dilated cardiomyopathy, sleep apnea, diabetes, a spinal fusion, plantar fasciitis, sacroiliac joint disease, stress, muscle skeletal disorder, and multilevel degenerative disc disease as the medical conditions that limited his ability to work. R. 353. After his applications were denied initially and on reconsideration, Hall requested a hearing before an ALJ. On June 6, 2017, ALJ Amy Benton conducted a video hearing where Hall, who was represented by counsel, and a vocational expert (VE) testified. R. 18, 40.

At the time of the hearing, Hall was 42 years old and still recovering from his April 24, 2017 surgery to revise the original L4 through S1 fusion with an extension up to L3/L4 level. R. 44–45. He had completed about two years of college, but did not have a college degree or other certificate. R. 45. For about 13 years, Hall worked for the City of Milwaukee as a custodian; his job working in city housing involved sweeping, mopping, cleaning, small repairs, plumbing, some painting, stripping, waxing, and the removal of stoves, among other tasks. R. 46–47. This work involved lifting about 75 pounds. R. 47.

Hall testified that he left his job at the City of Milwaukee because he could no longer perform the work. *Id.* Pain, fatigue, and medicine-related dyspepsia kept Hall from gaining new employment. *Id.* Due to his recent surgery, he was under a lift restriction of no more than a gallon of milk; before the surgery he was on a 25-pound restriction. R. 47–48. While he testified that he could not walk longer than a block, he also stated he could walk or stand for about an hour and a half and sit in an office chair for an hour. *Id.* For his condition, he testified that he takes 2,400 milligrams of Gabapentin per day, Oxycodone, Meloxicam, blood pressure pills, Coreg, Diovan, and Lidocaine, among other medications. R. 48, 478. Hall believes the medications provide some help, but also cause fatigue. R. 48. On the day of the hearing, he was using a cane, which he said was prescribed for his lower back pain after an emergency room visit; he said he was prescribed a walker after his surgery. R. 48–49.

Hall testified that his 2013 back surgery "corrected" his daily "stabbing pain." R. 50. However, after the surgery, he experienced new problems: 24-hour spasms, sacroiliac joint pain, and burning in his lower back. R. 50–51. At home, he testified he was most comfortable on his back, lying flat; he spends about 50 percent of his day lying flat to remove pressure on his joints. R. 51. On bad days, when his pain level has reached "about a nine" he has gone to the emergency

room. *Id.* Standing for long periods of time, twisting, rain, and moving brought him pain at that level. *Id.* Once a day during the daytime, Hall said he fell asleep for about an hour without noticing. He said his cardiologist says it is a symptom of his medication. R. 53. Hall also has spinal stenosis in his neck, though he testified he had yet to receive any specific treatment for that condition. R. 54.

In a fourteen-page decision dated July 27, 2017, the ALJ concluded that Hall is not disabled. R. 18–31. The ALJ's decision followed the five-step sequential process for determining disability prescribed by the Social Security Administration (SSA). At step one, the ALJ found that Hall met the insured status requirements of the Social Security Act through December 31, 2018, and had not engaged in any substantial gainful activity since August 3, 2013, the alleged onset date. R. 20. At step two, the ALJ determined that Hall had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the left hip, and sleep apnea. R. 21. At step three, the ALJ concluded that Hall did not have an impairment or combination of impairments that met or medically equaled the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 23.

The ALJ then assessed Hall's residual functional capacity (RFC), finding that notwithstanding the temporary limitations he was under at the time of the hearing, he had the capacity to perform light work, "except he is unable to climb ladders or scaffolds." *Id*. The ALJ also stated that Hall can "occasionally stoop, kneel, crouch, and crawl," but "should avoid concentrated exposure to hazards, such as unprotected heights and moving mechanical parts." *Id.* At step four, the ALJ found that Hall was unable to perform past relevant work; he previously worked as a janitor, classified as medium semi-skilled work, but his RFC limits him to light work. R. 29. The ALJ asked the VE to testify about jobs in the national economy given Hall's age,

education, work experience, and RFC. R. 30. The VE testified that Hall would be able to perform the requirements of representative occupations including cleaner/housekeeping, routing clerk, and cafeteria attendant. *Id*. Accordingly, at step five, the ALJ concluded that Hall was not disabled. *Id*. The Appeals Council denied Hall's request for review, making the ALJ's decision the final decision of the Commissioner. R. 1.

**LEGAL STANDARD**

The question before the court is not whether the judge reviewing the case thinks the plaintiff is disabled. Judicial review of the decisions of administrative agencies is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Supreme Court recently reaffirmed that "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Beistek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Id.* "And whatever the meaning of 'substantial' in other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence is "'more than a mere scintilla.' . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229).

Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek v.*

*Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

Hall, who is proceeding *pro se*, lists eighteen errors committed by the ALJ that entitle him to relief. Hall's conclusory arguments fall into a few general categories. He makes broad challenges to the evidence considered by the ALJ and contests what evidence the ALJ considered and how she weighed that evidence. He also argues that the VE's testimony was deficient. Hall provides a single sentence describing each error along with some case and statutory citations but does not provide any citation to the administrative record. Although *pro se* filings are held to a less exacting standard than those prepared by counsel, the filing must contain a cogent argument with reasons supporting it as well as citations to authority and relevant parts of the record. *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001); *see also McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). Despite Hall's failure to develop his arguments as supported by factual allegations contained in the administrative record, the court has undertaken a review of the record and concludes that the ALJ's findings are supported by substantial evidence.

5

First, the ALJ determined that Hall had several severe impairments, including degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the left hip, and sleep apnea. R. 21. The ALJ concluded, however, that these severe impairments did not meet or medically equal any of those of listing-level severity. R. 23. At the hearing before the ALJ, Hall's attorney stated that he did not think any of the listings were met. R. 44. The ALJ then considered Hall's other impairments, including diabetes mellitus, hypertension, obesity, heart disease, sickle cell trait, asthma, plantar fasciitis, and GERD, but determined that they were non-severe or not medically determinable based on the evidence in Hall's record. R. 21. The ALJ also considered Hall's depression and anxiety, but determined they were not severe because they did not result in more than a minimal limitation on his ability to perform basic mental work activities in accordance with the applicable regulations. *Id.*

After evaluating the medical record and considering how Hall's medically determinable impairments limited his functioning, the ALJ formulated an RFC. R. 23. The ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is unable to climb ladders or scaffolds. He can occasionally stoop, kneel, crouch, and crawl. The claimant should avoid concentrated exposure to hazards, such as unprotected heights and moving mechanical parts.

*Id.* The ALJ found that Hall's symptoms—including back pain resulting in a lumbar fusion, hip pain, and sleep difficulties—could reasonably have been expected as a result of his medical impairments. R. 24. But, the ALJ found that Hall's allegations about these symptoms' intensity, persistence, and limiting effects were not "entirely consistent" with the medical record and other evidence. *Id.* The ALJ considered that Hall testified he could stand or walk for approximately one and a half hours and walk for about a block; the ALJ also considered that Hall typically takes care of his then four-year-old daughter. *Id.* And despite Hall's back pain, the ALJ found that he

6

did not have "significant spinal canal or nerve root encroachment" based on the medical record provided. *Id.*

The ALJ also discussed the findings of the state agency medical consultants who found that Hall could perform light work and restricted Hall to only occasional stooping. R. 27. The ALJ afforded these opinions "little weight" because he found Hall "slightly more limited" than the state agency doctors. *Id.* The ALJ afforded the state agency psychological consultants—who found that Hall had a non-severe mental impairment despite being diagnosed with depression and anxiety—"significant weight" because they were consistent with the evidence that showed Hall alert, oriented, and pleasant. *Id.*

Next, the ALJ reviewed Hall's history of medical treatment from his own providers, noting that Hall had surgery in 2013 consisting of a posterior lumbar spine interbody fusion. R. 24. After the surgery, Hall noted some improvement in his condition. *Id.* The ALJ noted that Hall was diagnosed with degenerative disc disease of the lumbar spine. R. 25. The ALJ reviewed additional medical records from 2014 and 2015, showing that Hall complained of back pain and neck pain. *Id.* Despite these complaints, the ALJ noted that Hall's records indicated he had full range of motion in the neck and no evidence of gross motor or sensory deficits. *Id.* The ALJ also recounted Hall's treatment from Dr. Nicholas Glass in 2015. *Id.* Hall complained to Dr. Glass of back, neck, hip, and feet pain, but also stated he could walk up to a mile on level ground. *Id.* Hall's cervical and lumbar spine showed some limited range of motion and he had some limitations in squatting and bending, but there was no evidence of muscular atrophy, scoliosis, or kyphosis. *Id.* The ALJ also examined medical evidence from 2016 and 2017, noting that Hall visited the ER due to back pain and separately complained of anterior neck pain. R. 26. A physical exam showed that Hall's SI joints and neck had some tenderness to palpation, but he was

7

able to rise independently to a standing position and there were no masses palpated or swelling. *Id.*; R. 1709. Dr. Thomas Doers performed back surgery on Hall in April 2017, consisting of a transforaminal lumbar interbody fusion at the L3-L4 level. R. 26; R. 1739. Following the surgery, Hall's neck and upper and lower extremities exhibited full range of motion; he had no joint tenderness or swelling. R. 26.

After recounting this medical history and the opinions of the state agency physicians, the ALJ considered the opinions of Hall's treating providers. The ALJ afforded "some weight" to the opinion of Dr. Glass that Hall had "limited ability to bend or stoop, but ambulated without difficulty or assistive device." R. 28. However, the ALJ noted that Dr. Glass's opinion was not a "complete opinion" and did not contemplate other exertional limitations. Id. The ALJ gave "little weight" to the medical opinion that Hall was restricted to lifting more than 10 pounds. This restriction was listed as a part of the "discharge instructions" following Hall's April 2017 surgery, R. 1726, and, as a result, the ALJ found that the restriction was a temporary limitation meant to apply to the four to six weeks following Hall's surgery. R. 28.

Indeed, Hall's entire testimony at the June 6, 2017 hearing concerning his condition so shortly after his most recent surgery suffered from the same problem. As his attorney explained at the outset of the hearing, Hall was still in the recovery phase for the surgery revising the original L4 through S1 fusion and extension to L3/L4 level at the time of the hearing. R. 44. Because he was still in the recovery phase, there was no reason to believe his condition at that time would continue for the required twelve months.

Hall also argues that the ALJ improperly relied on the fact that, at least prior to his surgery, he could take care of his daughter and go shopping. By itself, the ALJ's description of these daily activities does not prove that he can perform the full range of light work on a sustained basis. But

8

the ALJ did not make such a claim. Instead, she cited Hall's daily activities as just a portion of the entire record—also consisting of Hall's medical record, his testimony, and his subjective complaints—that she used to reach her decision that Hall's claims did not support a finding of disability. *See Pepper v. Colvin*, 712 F.3d 351, 369 (7th Cir. 2013) ("The ALJ concluded that, taken together, the amount of daily activities Pepper performed, the level of exertion necessary to engage in those types of activities, and the numerous notations in Pepper's medical records regarding her ability to engage in activities of daily living undermined Pepper's credibility when describing her subjective complaints of pain and disability."). The ALJ did not infer that Hall was capable of full-time work based on his ability to perform activities of daily living. *See Stark v. Colvin*, 813 F.3d 68, 688 (7th Cir. 2016); *Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014). Instead, the ALJ found that Hall's alleged level of impairment was not consistent with the medical evidence and the record as a whole.

Hall also claims that the ALJ improperly evaluated his subjective complaints. The Social Security regulations set forth a two-step procedure for evaluating a claimant's statements about the symptoms—that is, the claimant's subjective complaints—allegedly caused by his impairments. 20 C.F.R. § 404.1529. The ALJ begins by deciding whether a medically determinable impairment "could reasonably be expected to produce the pain or other symptoms alleged." § 404.1529(a). If so, the ALJ then "evaluate[s] the intensity and persistence" of the claimant's symptoms and determines how they limit the claimant's "capacity for work." § 404.1529(c)(1). In evaluating the intensity and persistence of a claimant's symptoms, the ALJ looks to "all of the available evidence, including your history, the signs and laboratory findings, and statements from you, your treating and nontreating source, or other persons about how your symptoms affect you." *Id*. "Signs" are "anatomical, physiological, or psychological

9

abnormalities which can be observed, apart from your statements (symptoms)." § 404.1502(g). The ALJ assesses whether the claimant's statements about the intensity, persistence, and limiting effects of his symptoms are consistent with the objective medical evidence and the other evidence of record. SSR 16-3p. Applying this standard, the ALJ concluded that, while Hall's impairments could reasonably be expected to produce his symptoms, Hall's statements concerning the intensity, persistence, and limiting effects of his symptoms are not consistent with the record, as summarized above. R. 24. Given that the ALJ applied the correct legal standards and that substantial evidence supports her decision, I do not find that the ALJ erred in her evaluation of Hall's subjective complaints of pain.

Hall also contends that the VE failed to provide an estimate of the number of jobs available in his local area or region. This is not required by the applicable regulations, however. The plain language of 20 C.F.R. § 404.1566 provides: "We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether . . . [w]ork exists in the immediate area in which you live . . . ." § 404.1566(a)(1). The regulation continues: "[I]f work that you can do does exist in the national economy, we will determine that you are not disabled. . . . We will determine that you are not disabled if your residual functional capacity and vocational abilities make it possible for you to do work which exists in the national economy, but you remain unemployed because of—(1) Your inability to get work; (2) Lack of work in your local area . . . ." 20 C.F.R. § 404.1566(b), (c)(1)–(2). Under this regulation, a claimant who can do work that exists in the national economy will not be considered disabled if a significant number of jobs exist either in the claimant's region or in several other regions of the country—work need not exist in the claimant's local area. In this case, the ALJ was justified in following this regulation and

relying on the VE's testimony as to jobs that existed in the national economy. *Cf. Biestek*, 139 U.S. at 1152 (declaring that "the ALJ needed to ascertain whether those kinds of jobs exist[ed] in significant numbers in the national economy" and citing § 404.1566, among other statutes, in support (internal quotation marks omitted)).

Hall also argues that the ALJ improperly discounted the opinions of his treating source physicians. Generally, the medical opinion of a treating physician on the nature and severity of an impairment is given "controlling weight" if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with other substantial evidence." *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010); 20 C.F.R. § 416.927(c)(2); SSR 96-2p; *see also Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). If the ALJ decides to give lesser weight to a treating physician's opinion, he must articulate "good reasons" for doing so. *Larson*, 615 F.3d at 749. Stated differently, although an ALJ is not required to give the treating physician's opinion controlling weight, he is still required to provide a "sound explanation for his decision to reject it." *Roddy*, 705 F.3d at 636 (citations omitted). "If the ALJ does not give the treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see also* 20 C.F.R. § 404.1527. The ALJ is not required to "explicitly weigh every factor." *Henke v. Astrue*, 498 F. App'x 636, 640 (7th Cir. 2012); *Elder v. Astrue*, 529 F.3d 408, 414–16 (7th Cir. 2008). Instead, the ALJ need only "sufficiently account for the factors." *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013). Here, the ALJ did not completely discount the opinions of Hall's treating providers and actually found Hall "slightly" more limited than the state agency medical consultants opined. The

ALJ explained that she afforded some of Hall's treating providers little weight because their opinions were intended to be temporary, post-surgery opinions. R. 28. The ALJ assigned Dr. Glass's opinion "some" weight because it was consistent with evidence showing Hall's limited range of motion, tenderness in the spine, and pain. She further noted that Dr. Glass's opinion did not address other postural, environmental, or exertional limitations and that the evidence in the record supports a finding that Hall is more limited than Dr. Glass opined. R. 28. The ALJ's finding that Hall was more limited than opined by Dr. Glass and the state agency physicians does not mean that Hall's impairments met listing-level severity or require a finding of disability. In light of the foregoing, I cannot conclude that the ALJ failed to properly weigh the opinions of Hall's treating providers.

Although Hall disagrees with the ALJ's finding that he is not disabled, his view, without more, does not invalidate the ALJ's decision, which is supported by substantial evidence in the record. *See Cass v. Shalala*, 8 F.3d 552, 555 (7th Cir. 1993). After a thorough review of the record, the court concludes that the ALJ did not commit any legal errors and that substantial evidence supports her decision. Accordingly, the Commissioner's decision is affirmed.

## CONCLUSION

For these reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED** at Green Bay, Wisconsin this 2nd day of March, 2020.

s/ William C. Griesbach
William C. Griesbach, District Judge
United States District Court